## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### MILLER v. MANN.

#### July 2d, 1891.

#### Absent, *Fauntleroy*, J.

SALE UNDER TRUST DEED—*Case at bar.*—Where trustee in a deed which does not prescribe terms other than those prescribed by Code 1887, § 2442, sells the trust property in accordance with the provisions of said section, such sale is valid, though he sells only half thereof, it being sufficient to satisfy the debts secured thereon, and the debtor not requiring the sale of more.

Appeal from decree of circuit court of Washington county, rendered February 26th, 1889, in a suit wherein J. M. Miller, the appellant, was complainant, and Henry A. Mann, Milton G. Mann and others, the appellees, were defendants. Opinion states the case.

*Routh & Stuart* and *F. S. Blair*, for appellant.

*Daniel Trigg*, for appellees.

LACY, J., delivered the opinion of the court.

The bill was filed in this cause by the appellant, in June, 1885, representing that he had become the purchaser of a tract of land at a sale thereof by a trustee, regularly and duly made after due notice and due advertisement; that the land

was conveyed in trust to the trustees to secure the payment of a bond of $600, duly executed by Henry A. Mann (the father) and Milton G. Mann (the son) to Henry Roberts, their creditor, and L. T. Cosby was named trustee therein, and duly accepted the trust, and signed the deed as trustee; and that there was also a second tract of land conveyed in the said deed to secure the said debt, about which there appears to be no controversy here. The tract of land situated in Poor valley, in the county of Washington, was sold under the trust deed, and purchased by the said appellant. The bill sets forth that this tract of land, which contained 300 acres, was formerly the property of Charles Mann, deceased, who was the father of the said Henry A. Mann and the grandfather of the said Milton G. Mann. That there were eight devisees of the said Charles Mann, deceased, and that Henry A. Mann purchased the interest of all of them except a grandchild, one Pattie Lucenda Mann, but that, being about to go into bankruptcy at that time, the said Henry A. Mann caused the said land to be by his brothers and sisters (he himself joining therein) conveyed by deed to his son, Milton G. Mann. That said deed was not recorded, but held subject to the order of Henry A. Mann, duly acknowledged by a third person. That both Henry A. Mann and Milton G. Mann executed the deed to the trustee, Cosby, to secure the debt due to Roberts. That after he had become the purchaser of this land he received a deed from the trustee, having paid the purchase-money down, which was $600, the amount of the Roberts debt secured therein. That it had not been necessary to sell the whole tract of land to pay the $600 due thereon, but that the trustee had divided the same, and he had become the purchaser of one piece of the land. That he had received and held possession of the deed from the children of Charles Mann, deceased, to Milton G. Mann; it having been delivered to him by Henry A. Mann, who had retained control of it, as the sale to Milton G. Mann was merely formal. That both of these, Henry A. Mann, and Milton G. Mann, were

now demanding this deed, and both claiming to be the owner
of the land in question, whereas this constituted a cloud upon
his title, and, moreover, the said Pattie Lucenda Mann, having
never parted with her interest in the said land, was the owner
of one-eighth of the same, whereas he, as the purchaser under
the aforesaid trust-deed, was the owner of one-half of the
whole; and prayed that the land might be partitioned between
him, giving him his one-half, according to his purchase, and
to Pattie Lucenda Mann her one-eighth out of the residue, and
the rest allotted to Henry A. Mann or to Milton G. Mann, as
the right might appear.   Milton G. Mann answered this bill,
and set forth that the facts in the bill detailed leading up to
the sale by the trustee, Cosby, to Miller were true, and adding
that when the deed was made to him he executed and delivered
to Henry A. Mann his note for $1,600, which had been given
by his father to Miller along with the deed.   In his answer he
contended that the sale was made on a most inclement day, at
the court-house of the county, remote from the land sold, and
but few persons were present at the sale; charged that the
land had been divided by the trustee, at the suggestion of Miller,
who had then become the purchaser of the best part of the
farm, and had left only what was worthless for him, and that
this was a fraud upon his rights; he denied any fraudulent
intent on the part of either Henry A. Mann or himself; and
prayed that the sale to Miller, as set forth above, might be set
aside as fraudulent and unfair; that inquiries be made about
title, and priorities of liens ascertained, before any future sale.
Lucenda Mann being an infant, answered by guardian at litem;
and on the 14th of May, 1886, the court rendered a decree in
the cause to the following effect, after bringing the cause on
upon what has been mentioned, and the order of publication,
duly published and posted against Lucenda Mann, as follows,
to-wit: " On consideration whereof, the court doth adjudge
that complainant, Miller, under purchase from trustee, Cosby,
acquired any title held by H. A. Mann and Milton G. Mann

to the land so purchased by him; and it is further adjudged, ordered and decreed that L. T. Cosby do, as special commissioner, hear proof of and report to court whether or not the deed from Charles Mann's devisees to M. G. Mann was delivered to M. G. Mann as and for his deed." The commissioner reported that "your commissioner is of opinion that said deed was delivered to M. G. Mann as and for his deed," and returned the deposition upon which his report was based. In October following, a petition was filed in the cause, by leave of the court, praying for a rehearing of the decree rendered at the May term, aforesaid, which objected to the trustee, Cosby, as a suitable person to take the account ordered; that the bill was demurrable; and suggesting various defects in the bill and in the proceedings. The answer to this bill sets forth, among other things, that the special commissioner, Cosby, was not only not objected to, but that his appointment was consented to, and that he was never objected to until he made his report against the defendant. On the 22d day of February, 1887, another decree was rendered in the cause, by which Cosby was set aside as commissioner, and the deposition taken by him suppressed, and the same ordered to be retaken, and referred it to F. T. Barr, who was appointed a commissioner to ascertain who has been in possession of the land devised by Charles Mann, deceased, since his death, and who is chargeable with rents to plaintiff, Pattie L. Mann, and for what time, and what amount of rents, and if those in possession thereof have placed permanent improvements thereon; what these improvements now add to the value of the land, and by whom they were placed there; what waste or injury, if any, has been done to the same by those in possession, and by whom the damages were caused thereby. And the commissioner will ascertain whether land has advanced in value since the 30th of April, 1881, and, if so, what is the extent of said advance. And the commissioner will also ascertain whether or not the deed of said devisees of said Charles Mann to said

Milton G. Mann was ever consummated by delivery. Said commissioner to make report to court. And leave was given to the defendants to file a cross-bill against the plaintiff, James M. Miller, to set up any fraud or any other matter going to the validity of the deed of Cosby, trustee, to said Miller, under which said Miller claims. This cross-bill was filed accordingly, set up substantially what has gone before, and bringing out the fact that James M. Miller was the son-in-law of Henry A. Mann, and had lived as a tenant on a part of this land, and had been put there by Henry A. Mann with the consent of Milton G. Mann. And to this Miller made answer, denying all fraud or collusion on his part with Cosby or anybody else. As to the sale, he said that the beneficiary required the trustee to sell under the deed. The land was advertised for two courts, being at one court adjourned over, to gratify the debtor; to the next court to give him the opportunity to raise money to pay the debt. That on the second court-day the debtors, neither of them, paid any part of the debt, nor did they put in an appearance. That complainant's son was in town, and yet absented himself from the court-house and from the sale. That a large crowd was present, and the day not specially inclement for the winter season. That since his purchase he has improved his land a good deal by honest toil, fencing, clearing and building some, and it is more productive; whereas the residue of the land has been left severely alone, and his land, being thus improved, is much sought after by his generous relatives, " who toil not, neither do they spin." The commissioner, Barr, on the 16th of May, 1888, made his report, and returned the accounts ordered. "*First.* Since the death of Charles Mann in 1866, the lands have been in the possession, first, of H. A. Mann, down to May 6, 1872, when M. G. Mann, by virtue of his deed, came into possession of these lands, except that Miller has since his purchase held possession of the lands he purchased from Cosby, trustee. *Secondly.* That H. A. Mann, M. G. Mann,

and J. M. Miller are severally liable for rents to Pattie L. Mann, and returned an account of this. *Thirdly.* That the improvements put on the land by Miller on his portion constitute the only improvements that add materially to the value of the land; that these add $250 to the value of the land; that the waste on the H. A. and M. G. Mann part of the land, when taken together, counterbalances, when the whole tract is considered, the improvements put by Miller; and that the deed of the lands by the devisees of Charles Mann, deceased, to M. G. Mann was consummated by delivery." To this report H. A. and M. G. Mann excepted, in seven exceptions, all pointed to and against the account for rents. On the 26th day of February, 1889, the decree complained of and appealed from here was rendered, in which the sale to Miller by Cosby was set aside and annulled, and Mann, the plaintiff in the cross-bill—that is, M. G. Mann—was required to pay to the purchaser $797.33, with interest on $654, part thereof, from 26th day of February, being the amount of the purchase-money with interest, and the value of improvements, from which rents were deducted, and in default of this payment a resale was ordered; and default being made in this payment, the commissioner named in the decree for the purpose, made the sale ordered, and reported the sale May 7, 1889, when it was bought by N. W. Mann, when it was sold at $833.22. The court, by decree in the cause, on the 25th day of May, 1889, confirmed this report, decreed that the money be distributed, costs first, and Miller's purchase-money next, from which was to be deducted one-third of the cost of Commissioner Barr's report. It is assigned as error here that this decree—that is, the decree of February 26, 1889—is erroneous because it annulled the sale made by the trustee, Cosby, to Miller, and in disturbing the decree of May 14, 1886.

It is difficult to discover from this decree the reason which moved the court to set aside and annul this sale made by this trustee. No reason is given. The commissioner in each case,

Commissioner Barr as well as the first, reports otherwise, and the court had by its decree of May 14, 1886, ratified the sale. One ground upon which it is attacked is that more time was not given the debtor to pay the debt secured by the said trust deed; another is that the trustee sold a part of the land, instead of the whole of it; and still another is that the sale was made of the best part. The evidence shows that every opportunity was afforded to the debtor to pay the debt; that, upon his assurance that he had $200 he could and would pay on the debt of $600, it was postponed a month, from one court-day to another, but this he did not pay, as we have seen; and on the day of sale, fixed upon by his request, he was absent because of bad weather, but a large crowd was present of other people. He did not have the money to pay, and after three years and more of postponement by this litigation he was still unable to pay it or to borrow it upon the condition of having the land back; and the claim of inadequacy of price is shorn of any force by the circumstance that after all of this delay, and notwithstanding Miller's permanent and substantial improvements, the land did not bring enough to pay the costs and Miller's debt for the purchase-money he had paid. The sale was made after due advertisement, and full notice to the debtor and the general public. The sale was completed, the money paid down by the purchaser, and a deed made by the trustee to him. And upon the faith of his purchase he had built upon the land, and made fences, and cleaned up rugged places, and improved the land for agriculture; whereas the other half of the land had been allowed to go to waste by the other parties, while they clamored for this, which had been adorned by the fruits of Miller's toil and industry. It would be a hard case if a purchaser in the market overt from the holder of the legal title, and acting according to the authority of the deed under which he held it, could by any rule of law be made thus to suffer. The trustee certainly did not err in selling so much of the land as was sufficient to pay the debt. A trustee, in any

such deed, unless the deed otherwise provide, shall, whenever required by any creditor secured, or any surety indemnified by the deed, or the personal representatives of any such creditor, or for which such surety may be liable, shall have become payable, and default shall have been made in the payment thereof, or any part thereof, by the grantor, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, for cash, having first given reasonable notice of the time of place and sale; and shall apply the proceeds of sale—first, to the payment of expenses attending the execution of the deed, including a payment to the trustee of five per cent. on the first $300, and two per cent. on the residue of the proceeds, and then *pro rata* (or in the order of priority, if any is prescribed in the deed) to the payment of the debts secured, and the indemnity of the sureties indemnified by the deed, and shall pay the surplus, if any, to the grantor, his heirs, personal representatives, or assigns. Code Virginia, section 2442. The trustee was vested with clear and distinct powers under this statute, by virtue of this deed, subject to the right of the debtor to deprive him of all power and control over the subject by payment of the debt. The debtor had himself clothed him with this power, and procured his acceptance thereof, by causing him to sign the deed along with himself. Having thus undertaken the trust, the trustee was liable if he failed faithfully to perform the trust. Every opportunity was given the debtor to pay the debt, and thus extinguish the powers of the trustee, but this he failed and neglected to do; and the execution and power of sale in the deed conveyed the title to the purchaser, and deprived the debtor of all interest in the premises.

The purchaser's title, if the power has been properly and regularly executed, is absolute and irredeemable. Irregularities, if taken advantage of promptly, may be corrected in a court of equity; and it is said that any conduct of the debtor that would render it inequitable for him to take advantage of

such defects would debar him from setting them up ; as, if the debtor has acquiesced for a long time, and has seen valuable improvements made upon the land, or has been guilty of laches or negligence in claiming his rights, equity will not interfere in his favor.    2 Perry, Trusts, §§ 602bb, 602i, 602ee.. But equity will not interfere to give the debtor further time to pay the debt.    Mr. Perry further says, the trust of a creditor under his deed or mortgage, if not otherwise expressed in the deed, is to sell the property, and, after deducting the amount of his debt and the expenses of the sale, to pay the balance, if any, to the debtor, his heirs, assigns, etc.    As to the complaint that the trustee did not sell the whole tract, that was unnecessary, as a part of it paid the debt, and it was his duty only to sell so much of the land as would satisfy the debt. In doing this he must exercise a reasonable discretion, and act as the agent of both parties, and, if the debtor so request, it might become his duty to sell more of this land than was necessary to satisfy the trust, to prevent injury to the residue of the tract; but in this case the debtor made no such request, and left the trustee to the exercise of his discretion, which in this case he has not abused.    There was no ground to set aside this sale.    It was in all respects regularly and properly done; and the cross-bill of the defendant Mann should have been dismissed with costs.    The court had no power, under the circumstances, to disturb this sale; and this is apparently recognized in the decree of the 14th May, 1886, when it ratified and held the sale binding.    We are referred to several decisions limiting the power of a commissioner to disturb a sale once confirmed by the court.    These cases have no application.    In this case the trustee was the vendor, and the sale was complete and binding and final without the aid of a court, to be disturbed only for causes which we have considered. None of these exist in this case.    The suit was not brought for that purpose, and under the circumstances of this case could not properly be entertained for that purpose.    The suit

was brought for the settlement of disputes growing out of the transactions between the said Henry A. and M. G. Mann, and to settle the dispute as to whether the deed to M. G. Mann could be recorded, and to have partition between Lucenda and the said Henry A. and M. G. Mann. The said M. G. Mann, as well as the said Henry A. Mann, had signed the bond and the deed, and it was not material to Miller to whom the title should finally accrue; but the sale had been of only one-half to pay the debt of both, whereas Lucenda Mann claimed one-eighth of the land, which should, as against Miller, be assigned to her in the one-half remaining; and upon them also is the burden of paying the rents due upon the one-eighth. The decree appealed from, as we have seen, is widely at variance with these well-settled principles, and the same must be reversed and annulled, and the cause remanded for further proceedings to be had in the said cause, in order to a final decree in the cause in accordance with the foregoing opinion of this court.

DECREE REVERSED.